IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTIN GROSS,** | : | **CIVIL ACTION** |
|      **Plaintiff** | : | |
|    v. | : | |
| | : | **NO. 10-2380** |
| **R.T. REYNOLDS, et al,** | : | |
|      **Defendants** | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                                September 22, 2011

Martin Gross brings this action as an individual and doing business as "The Art I Do" and alleges numerous civil rights violations in connection with his subcontractor work on a construction project at the Harrisburg University of Science and Technology ("Harrisburg University").  The remaining named defendants in this action are R.T. Reynolds, Inc. ("Reynolds"), the general contractor on the project; its officers or employees Ike Sholley, Wayne Spahr, Ron Whisker, Todd Buzard, and Dave Angle (referred to collectively as "the individual Reynolds defendants"); Harrisburg University and its President Eric Darr; Dellanor Young; and Graystone Bank.  Mr. Gross alleges civil rights violations against all the defendants and claims Reynolds is liable for breach of subcontract.  After all named defendants filed a motion to dismiss his original complaint, Mr. Gross filed an amended complaint and all the defendants thereafter filed motions to dismiss the amended complaint.  For the following reasons, I will grant the defendants' motions to dismiss Mr. Gross' § 1981 and § 1983 claims and I will decline to exercise supplemental jurisdiction over Mr. Gross' state law breach of contract claim against Reynolds.

I.     BACKGROUND

Reynolds was the general contractor on a building construction project that took place at Harrisburg University. Am. Compl. ¶ 12. Reynolds employs defendants Ike Sholley, Wayne Spahr, Ron Whisker, Todd Buzard, and Dave Angle. Id. at ¶ 7. Mr. Gross, who is African American, and an African American colleague, James White, submitted a bid to Reynolds for painting work on the project. Compl. ¶ 18. Gross now claims Reynolds solicited him for participation in the project, and accepted his bid with no intention to hire him, only to "secure the full benefit of the participation requirements of the bid specifications," which included the use of disadvantaged businesses. Id. at ¶¶ 19, 21. Reynolds hired Dellanor Young, a consultant, to monitor "the disadvantaged business provisions of the bid documents and the contract." Id. at ¶ 15. Reynolds had apprehensions about working with Gross and White, but solicited them for the painting work "because of the advantage Reynolds would gain from using a Harrisburg-based painting contractor on the project." Id. at ¶ 21. Work was to begin in November, 2007. Id. at ¶ 23. Harrisburg University is "a private institution" that receives "extensive federal, state, and/or local funding." Id. at ¶¶ 12, 13. Eric Darr is the President of the Harrisburg University. Id. at ¶ 9.

With respect to the individual defendants, Whisker and Spahr are alleged to have been primarily involved in the solicitation of and negotiations with Mr. Gross on behalf of Reynolds; Defendants Sholley, Buzard, and Angle were "involved in the contract management matters throughout the performance of the contract." Id. at ¶ 17. "Early in

the performance of the contract, it became apparent that work delays would not permit [Mr. Gross] to be able to commence and end its work as contemplated by the contract. Id. at ¶ 24.  At some point, Mr. Gross "began to make written and oral complaints to the defendants concerning these setbacks, and the strain they were putting on [him]." Id. at ¶ 29.  These communications "involved" Mr. Gross, Buzard, and Angle, and no other specifically named defendants.  Id. at ¶ 29.  Mr. Gross also attempted to work through Young to remedy the problems caused by the delays.  Id. at ¶¶30.  Once work finally began on the project in 2008, defendants sabotaged plaintiff's work schedule by granting preferences to non-minority contractors, id. at ¶ 33, and failed to meet contract commitments with plaintiff and other minority subcontractors, id. at ¶ 31.  Mr. Gross alleges that it was only when he hired a non-minority foreman that Reynolds, through Sholley, began to work with him to ensure that the contract work was completed.  Id. at ¶ 35.  Mr. Gross also alleges that Reynolds forced him to enter into a financing agreement with defendant Graystone Bank into which non-minority contractors were not made to enter, id. at ¶¶ 36-37, removed a $30,000 veneer job from plaintiff's contract and gave it to another contractor, id. at ¶ 39, and improperly refused to pay another subcontractor, D.E. Gemmill, for line-painting work, instead referring Gemmill to Mr. Gross for payment, id. at ¶¶ 43-35.

According to the complaint, "all painting work was finally completed . . . in or around April 2009, and, although plaintiff received progress payments under the terms of its subcontract in the approximate amount of the original total contract amount, [he] has

not been fully paid all amounts due, inclusive of all change orders[.]" Id. at ¶ 46. He claims he is still owed between $88,000 and $120,000 for work on the project. Id. He alleges the reason for the actions taken against him, including mistreatment in managing his subcontract and holding him to higher-than-industry-standards, is his minority status. Id. at ¶¶ 48, 49.

With respect to Graystone Bank, the amended complaint alleges that it was "through the requirements of plaintiff's subcontract with Reynolds" that "The Art I Do was required to enter into a separate financing agreement with defendant Graystone Bank." Am. Compl. ¶ 36. It further alleges that, unlike similarly-situated non-minority contractors, Mr. Gross was "required to grant Graystone a mortgage on [his] personal residence in order to secure the financing" with Graystone. Id. at ¶ 37. He claims this personal mortgage requirement "reflected a discriminatory mindset in dealing with minority subcontractors." Id. Finally, it is alleged that Graystone "has refused to release the lien on plaintiffs' property." Id. at ¶ 38.

In Count One of his complaint, Mr. Gross asserts claims against all defendants under 42 U.S.C. §§ 1981 and 1983 for failing to afford him equal protection of the laws and for discriminating against him on the basis of his race. Count Two contains claims against Reynolds alone for breach of contract and breach of the implied duty of good faith and fair dealing.

The bulk of the allegations in the complaint are leveled against Reynolds and the individual Reynolds defendants. In their motion to dismiss, these defendants, along with

Harrisburg University, Darr, and Young, assert that the allegations in Gross's complaint are vague, conclusory, and do not meet the pleading standards of Twombly and Iqbal. More specifically, Reynolds claims that Gross's contractual claims are barred because Gross admits that he was paid the original contract amount and because other actions he claims constituted breach of the contract – like Reynolds' removing some work from the subcontract and refusing to pay for additional costs incurred by Gross due to work delays – were actually permitted under the terms of the contract. All defendants argue that Mr. Gross's § 1981 claim is unsupported because he fails to adequately allege discriminatory animus and breach of contract. They claim his § 1983 claims are barred because Reynolds, its employees, Harrisburg University, and the rest of the defendants are all private actors. In its motion to dismiss, Graystone Bank claims that Mr. Gross' claims are time-barred and that he fails to state a claim upon which relief may be granted.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as

true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, the Supreme Court has rejected language in Conley stating that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561. Rather, a "complaint must allege facts suggestive of [the proscribed] conduct," id. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). Courts must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief. Ashcroft v. Iqbal - - U.S. - -, 129 S.Ct. 1937, 1950 (2009).

The Court of Appeals has recently made clear that after Iqbal, "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949).

Courts "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Because Mr. Gross refers to the subcontract into which he and Reynolds entered throughout his complaint, it is appropriate to consider both the copy of the contract attached as an exhibit to Reynolds' motion to dismiss and the copy of the financing agreement between Mr. Gross and Graystone Bank attached to the Bank's motion to dismiss.

### III. DISCUSSION

#### A. Motion to Dismiss § 1981 Claims Asserted in Count One of the Amended Complaint Against R.T. Reynolds, Sholley, Spahr, Whisker, Buzard, Angle, Harrisburg University, Darr, and Young

In Count 2 of his complaint, Mr. Gross alleges a 42 U.S.C. § 1981 claim. He claims that Reynolds, through Sholley, Whisker, Spahr, Buzard, and Angle, purposefully delayed the performance of its contract with Mr. Gross and failed to perform in

accordance with the contract's terms. Am. Compl. ¶ 55(a). He claims that Harrisburg University, Darr, and Young failed "to act in accordance with their contracts and take appropriate actions to force Reynolds to meets its contractual commitments[.]" Id. at ¶ 55(b).

Reynolds claims that Mr. Gross' § 1981 claim is not supported by sufficient factual allegations.[1] Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In order to state a claim under § 1981, a plaintiff "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts[.]" Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship' . . . under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006). Section 1981 "offers relief when

---

[1] He also claims that because Mr. Gross has not stated a claim for breach of contract, his § 1981 claim for interference with his contractual rights must also fail. I will not address this argument because I find that Mr. Gross' § 1981 claim is not supported by sufficient factual allegations.

racial discrimination . . . impairs an existing contractual relationship, so long as the plaintiff has . . . rights under the existing or proposed contractual relationship." Id.

In order to state a violation of § 1981, "a specific factual basis must be pled to create the inference of discrimination." Frederick v. Se. Penn. Transp. Auth., 892 F. Supp. 122, 125 (E.D. Pa. 1995). Therefore, to adequately allege the intent to discriminate under the statute, "conclusory allegations of generalized racial bias" will not do. Flagg v. Control Data, 806 F.Supp. 1218, 1223 (E.D. Pa. 1992); see also Deserne v. Madlyn Leonard Abramson Center For Jewish Life, Inc., No. 10-3694, 2011 WL 605699 at *2 (E.D. Pa. Feb. 16, 2011) (dismissing plaintiff's § 1981 claim where she asserted that she was denied similar benefits and terms of employment, "treated badly," and ultimately suspended based on her race and finding her allegations "wholly conclusory" because they did not "include any facts to suggest that [her] supervisor's actions were motivated by her race and/or national origin").

### 1. R.T. Reynolds and the Individual R.T. Reynolds Defendants

Mr. Gross does not plead facts sufficient to make his § 1981 claims against Reynolds and the individuals Reynolds defendants plausible. Mr. Gross asserts that Reynolds "had apprehensions about dealing with both [Mr. Gross] and James White from their past dealings" but solicited them for business nonetheless. Am. Compl. ¶ 21. He initially alleges that Reynolds had animus against White not due to his race (also African American), but because White had refused to assist Reynolds in concealing the true

nature of a mold problem at the Hershey Hotel in 2005. Id. at ¶ 22. When Reynolds, through Ike Sholley, later demanded that White be removed from work on the project, Mr. Gross claims this was because of the race of both men and because White had earlier made inquiries about the treatment of minority contractors at Harrisburg University. Id. at ¶ 28.

Mr. Gross claims, vaguely, "the Reynolds defendants, through defendants Sholley, Whisker, Angle, Buzard, Spahr, and others, purposefully sabotaged plaintiff's work schedule by showing favoritism and granting preferences to other non-minority contractors." Id. at 33. Mr. Gross also alleges that Reynolds, again through Sholley, became more cooperative in completing the contract work once Mr. Gross hired a non-minority foreman. Id. at ¶ 35. Finally, he claims that he was made, by Reynolds, to enter into a financing agreement with Graystone Bank into which non-minority contractors were not made to enter. Id. at ¶ 37.

Mr. Gross' allegations are even sparser against individual defendants Ike Sholley, Dave Angle, Ron Whisker, and Wayne Spahr. These individual defendants were all, according to the amended complaint, officers, employees, or agents of R.T. Reynolds. Sholley, Buzard, and Angle were allegedly "involved in the contract management matters throughout the performance of the contract." Am. Compl. ¶ 17. Whisker and Spahr, on the other hand, were "primarily involved in the solicitation and negotiations with plaintiff on behalf of Reynolds." Id. Mr. Gross alleges that Sholley sent him a letter demanding that Mr. White not be placed on the project. He then, in conclusory fashion, alleges that

that this was for discriminatory reasons.  Id.  He also alleges that Sholley specifically was more cooperative in his dealings with Mr. Gross when Mr. Gross hired the non-minority foreman.  Id. at ¶ 35.  Mr. Gross claims he communicated frequently with Buzard and Angle about the project delays and that these two, in addition to Sholley, Whisker and Spahr, "purposefully sabotaged plaintiff's work schedule by showing favoritism and granting preference to other non-minority contractors."  Id.  at ¶ 33.  All are accused of acting out of discriminatory bias.

There are no facts asserted to make Mr. Gross' claim against Reynolds and the individual Reynolds defendants plausible; therefore, under the heightened pleading standards of Twombly and Iqbal, I will dismiss Mr. Gross' § 1981 claims against them.  The allegation that discrimination was directed at Gross due to his association with White creates an inference that it was due to White's past work, and not his race.  There are no factual allegations supporting an inference of bias by Reynolds, other than the vague allegation that Gross was not treated as favorably as other non-minority contractors.  Mr. Gross does not identify the way the favoritism was manifested or the preferences which non-minority contractors were granted.  There are no facts alleged that are sufficient to support an inference of racial bias by the individual Reynolds defendants.  Mr. Gross alleges that they communicated with him at various stages in the contract process, and in conclusory fashion, that they showed favoritism and granted preferences to non-minority subcontractors. Because Mr. Gross has failed to allege specific factual allegations concerning their involvement I will also dismiss the claims against the individual

defendants. Accordingly, Gross' § 1981 claim against Reynolds and the individual Reynolds defendants is dismissed.

### 2. Harrisburg University and Eric Darr

Mr. Gross's amended complaint contains threadbare allegations against Harrisburg University and its President Eric Darr. While it is clear that the construction project for which Reynolds was the general contractor and Mr. Gross was a subcontractor was a building project at Harrisburg University, there is no allegation that Mr. Gross contracted with it, or that the University had any part in the performance of the subcontract between Reynolds and Mr. Gross. With respect to Mr. Darr, the amended complaint alleges vaguely that he once "approached [Mr. Gross] and made inquiries into the nature of his relationship with Reynolds and the minority commitments" of the contract, and that Mr. Gross "had the impression" from this conversation that "Darr was trying to learn things from him surreptitiously[.]" Am. Compl. ¶ 26. These defendants are not mentioned again in connection with any specific factual allegations. Rather, at the conclusion of the complaint, Mr. Gross asserts that Harrisburg University and Darr, along with Reynolds and all other named defendants, "knowingly subjected [Mr. Gross] to disparate treatment in the management of his subcontract because he is a minority." Id. at ¶ 48.

The complaint does not plausibly state a cause of action against these two defendants. They were not party to the contract with Mr. Gross, and the factual allegations in the complaint do not support an inference that they interfered in the

contractual relationship between Reynolds and Mr. Gross, or did so for discriminatory reasons. Therefore, I will also dismiss this claim.

### 3. Dellanor Young

Dellanor Young is identified in the amended complaint as the owner and operator of a minority business consulting firm "charged with the responsibility of monitoring the disadvantaged business provisions of the bid documents and the contract." Am Compl. ¶ 15. Mr. Gross does not allege that Reynolds solicited him for the subcontract by acting through Young; however, he does state that he tried (unsuccessfully) to remedy the problems caused by the delays in performing work under the contract by communicating with Young. Id. at ¶ 30. He further asserts that, "upon information and belief, [Young] knew that Reynolds was failing to meet its commitments to Plaintiff and perhaps other minority contractors, and knowingly worked with Reynolds to conceal the nature of the problems and to fail to work toward contractual or extra-contractual remedies for these failures." Id. at ¶ 31. Again, there is no information in the complaint about how Young concealed any problems or how Young was monitoring the project. Accordingly, under the heightened pleading standards of Twombly and Iqbal, I will dismiss Mr. Gross' § 1981 claim against Mr. Young.

### B. Motion to Dismiss § 1981 Claim Asserted in Count One of the Complaint Against Graystone Bank

Graystone Bank asserts that Mr. Gross' § 1981 claim against it is barred by the applicable two year statute of limitations on such claims, and that it does not contain enough factual material, taken as true, to support a discrimination in lending claim under § 1981. I will address the latter argument first.

The Third Circuit has recently held that:

> In order to make out a prima facie case of lending discrimination in a § 1981 case, a plaintiff must show (1) that he belongs to a protected class, (2) that he applied and was qualified for credit that was available from the defendant, (3) that his application was denied or that its approval was made subject to unreasonable or overly burdensome conditions, and (4) that some additional evidence exists that establishes a causal nexus between the harm suffered and the plaintiff's membership in a protected class, from which a reasonable juror could infer, in light of common experience, that the defendant acted with discriminatory intent.

Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 275 (3d Cir. 2010).

Mr. Gross' allegations against Graystone lack specific facts. He claims that he was made to take out a personal mortgage on his property in order to secure a line of credit with Graystone, and that other, non-minority subcontractors were not made to do so. There are absolutely no other factual allegations concerning Graystone. Noticeably absent are allegations that Mr. Gross was qualified for an unsecured line of credit or that the requirement of a mortgage on his personal property was unreasonable or overly burdensome. Mr. Gross' naked assertion that he was treated differently from non-minority subcontractors because he was made to take out a mortgage on his home,

14

without more, is insufficient to meet the heightened pleading standards under <u>Twombly</u> and <u>Iqbal</u>. Accordingly, Mr. Gross' § 1981 claims against Graystone Bank are dismissed.

### C. Motion to Dismiss § 1983 Claims Asserted in Count One of the Amended Complaint Against R.T. Reynolds, Sholley, Spahr, Whisker, Buzard, Angle, Harrisburg University, Darr, and Young

Count One of Mr. Gross' complaint alleges that all named defendants "have intentionally failed and/or refused to afford plaintiffs the equal protection of the laws based solely upon their status as minority owned business, all in violation of 42 U.S.C. § 1983." Am. Compl. ¶ 56. "Section 1983 . . . does not create substantive rights, but provides a remedy for the violation of rights created by federal law." <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 633 (3d Cir. 1995). Two elements are necessary for recovery under § 1983: first, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States; second, he must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 150 (1970). Simply stated, the defendant must show that the defendant acted under color of law. <u>Id.</u> Mr. Gross does not allege in his complaint that Reynolds, the individual Reynolds defendants Sholley, Spahr, Whisker, Buzard, and Angle, Harrisburg University President Eric Darr, or Delanor Young, were acting under color of state law. He appears to concede as much in his response to the motion to

dismiss. Therefore, I will dismiss the § 1983 claims against Reynolds, Sholley, Spahr, Whisker, Buzard, Angle, Darr, and Young.

However, with respect to Harrisburg University, he states in his complaint that it is "a private institution" but that its construction project "received extensive federal, state, and/or local funding, was subject to public procurement requirements and standards, and reporting requirements, including *inter* alia, prevailing wage laws and the City of Harrisburg's disadvantaged business program for minority and women owned businesses." Am. Compl. ¶ 13. He admits obliquely in his response to the defendants' motion that "as alleged, it has become more clear that the Harrisburg University is a private educational institution." Pl.'s Resp. to Def.'s Motion to Dismiss, 11. However, he adds that the general nature of information he possesses at this point should allow him to proceed against it since there "appear[s] to have been certain reporting and contract compliance requirements that have been imposed as a matter of state law." Id. at 11. Mr. Gross presumably is referring to the allegations, contained both in the preamble and throughout his complaint, that Reynolds received "minority participation points for its subcontract with plaintiff in accordance with [Harrisburg's] disadvantaged business program[.]" Am. Compl., 2.

This allegation is insufficient to establish that Harrisburg University is a state actor. Even where a private institution receives state funding or is subject to extensive state or federal government regulation, it is not a state actor. See Rendell-Baker v. Kohn, 457 U.S. 830, 840-842 (1982) (finding that a private school's receipt of public funds

"does not make [its] discharge decisions acts of the State"); Blum v. Yaretsky, 457 U.S. 991, 1010, 1011 (1982) (finding that nursing homes subject to state and federal regulations are not state actors). Therefore, it is appropriate to dismiss Mr. Gross' § 1983 claims against Harrisburg University. It is a private institution, and the vague allegations contained in Mr. Gross' complaint do not create a plausible inference that there is any "extensive and significant" connection between it and the state such that it should be considered a state actor. See Sherry v. Associates Commercial Corp., 60 F. Supp. 2d 470, 474-75 (W.D.Pa. 1998) (discussing the instances in which a private entity's conduct constitutes state action for purposes of § 1983).

### D. Motion to Dismiss § 1983 Claims Asserted in Count One of the Amended Complaint Against Graystone Bank

Mr. Gross' complaint contains no allegation that Graystone Bank is a state actor. As stated above with respect to the claims against Harrisburg University, vague allegations of some connection to the state are insufficient as a matter of law to support a claim against a private actor under § 1983. Thus, the § 1983 claim against Graystone Bank is dismissed.

### E. Motion to Dismiss Eloise Gross as a Plaintiff

All remaining defendants seek to remove Eloise Gross as a plaintiff in this case. Reynolds claims that because she is not listed in the caption of the complaint, she should

be dismissed. Mrs. Gross was not listed in the caption of the original complaint, although she was listed as a plaintiff. Complaint, ¶ 6. She is listed in the caption of the amended complaint. Defendants seek to dismiss her as a plaintiff because Mr. Gross did not seek leave to add her to the caption in the amended complaint, and because "she is mentioned only once in the body of the Amended Complaint." Defendants are correct - there are no allegations in the complaint concerning Mrs. Gross specifically. She is simply described as Mr. Gross' wife, and it is *not* asserted that she is a member of a racial minority, which is necessary to support any § 1981 claim asserted on her behalf. Neither is it alleged that she was party to contract entered into between Mr. Gross and Reynolds. Thus, she is dismissed as a plaintiff to this suit.

### F. Breach of Contract Claim Asserted in Count Two of the Amended Complaint

Count Two of Mr. Gross' amended complaint asserts a cause of action for breach of contract and breach of the implied duty of good faith and fair dealing against Reynolds. Mr. Gross claims that this Court has supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, which provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Federal courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367.  "Where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d. Cir. 1995).  I have dismissed Mr. Gross' § 1981 and § 1983 claims, leaving only Mr. Gross' state law breach of contract claim.  I find there are no compelling considerations for this Court to exercise supplemental jurisdiction over Mr. Gross' state law breach of contract claim.  Accordingly, I decline to exercise supplemental jurisdiction over Mr. Gross' state law claim under § 1367(c)(3) and dismiss the claim.

## IV.   CONCLUSION

Accordingly, I will grant defendants' motions to dismiss Mr. Gross' § 1981 and § 1983 claims and I will decline to exercise supplemental jurisdiction and dismiss Mr. Gross' remaining breach of contract claim.

An appropriate Order follows.